CUPAC, INC., Appellant,

v.

DALY AGENCY, Respondent,

John H. Crowther, Inc., et al.,
Defendants,

The Home Insurance
Company, Respondent.

No. C0–87–832.

Court of Appeals of Minnesota.

Nov. 10, 1987.

Marlene R. Tschida, Gislason, Martin & Varpness, Edina, for CUPAC, Inc.

Robert E. Boyle, Larkin, Hoffman, Daly & Lindgren, Ltd., Bloomington, for Daly Agency.

Thomas E. Harms, Hessian, McKasy & Soderberg, Minneapolis, for The Home Ins. Co.

Heard, considered and decided by RANDALL, P.J., and CRIPPEN and MULLALY,* JJ.

## OPINION

CRIPPEN, Judge.

This is an action arising out of a premium financing agreement between CUPAC and Arctic Air Transport (Arctic). CUPAC

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

seeks to collect returned premiums paid by The Home Insurance Company (Home) to Daly Agency (Daly) on behalf of Arctic. We affirm a decision of the trial court denying CUPAC's claims.

## FACTS

CUPAC is a premium financing company. It pays the upfront cost of insurance premiums for insured parties who make a down payment and monthly payments to CUPAC. In the fall of 1981, Arctic financed several of its insurance policies through CUPAC. The premium financing agreement between Arctic and CUPAC appointed CUPAC attorney in fact, granted CUPAC authority to cancel the policies, and assigned return premiums resulting from such cancellations to CUPAC. The returned premiums from cancelled policies were to be made payable in the name of CUPAC alone. The agreement was negotiated and signed by Arctic, and a warranty on the back of the document was signed by IMI Agency.

IMI Agency, Inc. sold Arctic two policies written by The Home Insurance Company. The initial premium for policy no. TM563684 was $8900 for coverage from October 27, 1981 through October 27, 1982. Home policy no. TK6054800 had a premium of $80,000 for coverage for the same dates.

Arctic consistently made late payments or sent insufficient funds checks to CUPAC. As a result, CUPAC cancelled the policies when payments were late or an insufficient funds check was received. When Arctic made proper payment, CUPAC reinstated the policies. Policy no. TM563684 was cancelled and not reinstated on June 1, 1982. Because CUPAC timely notified Home of the premium finance agreement, Home paid the returned premiums from that policy to CUPAC. Policy no. TM563684 is not at issue in this case.

CUPAC also attempted to cancel policy no. Tk6054800. However, before this policy was cancelled, Arctic filed for bankruptcy. As a result of the automatic stay imposed by 11 U.S.C.A. § 362 (West Supp. 1987), the policy remained in effect until its original expiration date.

Return premiums on policy No. TK6054800 were generated by an unanticipated reduction of coverage cost. Some of the unearned premiums were sent to Daly Agency (Daly) which took over IMI's role as agent for this policy on July 15, 1982. When Home transferred its policies from IMI to Daly, Daly was not notified of the premium financing agreement. At Arctic's instructions, Daly used the returned premiums from TK6054800 to procure additional insurance for Arctic. CUPAC claims that this sum should have been paid directly to CUPAC.

Because the material facts of this case are not in dispute, the parties moved for summary judgment. Partial summary judgment was granted in favor of Home in September 1986, and in favor of Daly in October 1986. Judgment was entered for these parties pursuant to Minn.R.Civ.P. 54.-02 on February 19, 1987. CUPAC appeals from the judgment.

## ISSUES

1. Absent an express agreement to which it is a party, must an insurance company return unearned premiums directly to a premium financing company at the expiration of a policy?

2. Is an agent with no notice of the premium financing agreement liable for return of unearned premiums to the premium financing company?

## ANALYSIS

The trial court found that the return of premiums on Arctic's insurance policies was governed by the terms of the premium finance agreement. Because Home was not a party to that agreement, the court held that Home was not bound by its terms. The court further found that even if Home had been bound by the agreement, the terms of the contract did not unequivocally require return of unearned premiums from expired policies to CUPAC. Finally, the trial court found that Daly was not liable to CUPAC in the absence of notice of the assignment of premiums from Arctic to CUPAC.

## I.

■ First, CUPAC asserts that IMI's signature on the premium finance agreement binds Home by its terms.

IMI knew of the agreement and signed it, obligating itself to pay unearned premiums to CUPAC upon cancellation of the policy according to its language. However, IMI did not act as the agent of Home when it signed the agreement.

Minn.Stat. § 72A.03 explains the role of the agent in binding an insurer. The pertinent part of that statute reads:

> Every insurance agent who acts for another in negotiating a contract of insurance by an insurance company shall be held to be the company's agent for the purpose of collecting or securing the premiums therefor, whatever conditions or stipulations may be contained in the contract or policy.

Minn.Stat. § 72A.03 (1980).

The trial court correctly concluded that section 72A.03 limits the extent to which an insurer may be held responsible for the acts of an agent. IMI was an agent of the insurance company only for the purposes of procuring premiums, not for the purposes of monitoring an ongoing policy.

Neither does *Automated Systems v. National Indemnity Company*, 269 N.W.2d 749 (Minn.1978), stand for the proposition that an insurer is bound by the acts of an agent beyond the agent's collection of premiums, as CUPAC claims. *Automated Systems* concerned a dispute over the collection of premiums and is inapposite to this case.

Home was not a party to the CUPAC agreement. While it may have been aware that Arctic's premiums were financed by CUPAC, Home had not necessarily seen a copy of the agreement nor had Home agreed to abide by its terms. IMI did not have the authority to bind Home on a contract between Arctic and CUPAC concerning returned premiums. Minn.Stat. § 72A.03 makes IMI an agent of Home only for a limited scope of activity: for the purpose of negotiating a contract of insurance and collecting premiums. IMI negotiated the contract and collected the premiums, but it had no authority to bind Home on the agreement.

Second, CUPAC asserts that Home obligated itself to return all premiums to CUPAC because it did follow the terms of the agreement by making payment to CUPAC for returned premiums from policy no. TM563684. That policy generated unearned premiums because it was cancelled.

Payment upon a cancelled policy does not bind Home to pay upon the expiration of a policy. Even the terms of the agreement treated cancelled policies and expired policies differently. The terms of the agreement gave CUPAC the power of attorney to cancel any policy upon default in payments by Arctic and upon *cancellation*

> the unpaid balance shall become due and payable at the option of CUPAC and * * * any return * * * shall be made payable in the name of CUPAC.

However, upon *expiration* of a policy, Arctic

> assign[ed] to CUPAC as security for the total amount payable hereunder any and all unearned premiums and dividends which may become payable.

Hence, it is clear from the terms of the agreement itself that, upon expiration of a policy, CUPAC had no more than a security interest in the returned premiums.

The trial court correctly found that Home did not obligate itself to pay CUPAC returned premiums upon the expiration of policy no. TK6054800 simply because it had made payment of returned premiums upon the cancellation of policy no. TM563684. Moreover, even if Home had been a party to the agreement, it would not have been obligated to pay by the terms of the agreement itself.

Third, CUPAC argues that because Home had notice of the assignment of returned premiums by Arctic to CUPAC, Home was bound by the assignment to pay returned premiums directly to CUPAC.

■ By the terms of the CUPAC agreement, CUPAC was granted power of attorney to cancel the policy upon default of payments by Arctic. Arctic also assigned

all rights to the payment of returned premiums to CUPAC. CUPAC claims, though it offered no authenticated evidence to prove, that it sent notice of this assignment to Home, and that because of this notice, Home was bound to pay CUPAC. CUPAC does not claim it notified Home that Arctic was in default on the agreement.

The trial court correctly found that notice of the agreement did not obligate Home to pay the returned premiums on no. TK6054800 to CUPAC. The assignment to CUPAC upon expiration of a policy was merely a security interest.

While CUPAC was not required to file or record any documents in order to perfect its security interest, it did need to give notice to Home of Arctic's default and its intent to exercise its security interest. Because CUPAC failed to do this, it is without remedy at this point.

Finally, Minnesota law does not require Home to pay CUPAC returned premiums on an expired policy.

At oral argument, Home explained that the returned premiums were the result of some type of audit of policy no. TK6054800. Although neither party raised the issue, this court noted the possible application of Minn.Stat. § 59A.12 (1986) to this case. Minn.Stat. § 59A.12, subd. 2, provides:

> In the event that a premium is subject to an audit to determine the final premium amount, the gross unearned premium will be calculated upon the deposit premium and the insurer shall return whatever gross unearned premiums are due based upon the deposit rather than the actual unearned premium to the finance company for the account of the insured or insureds.

Because of the ambiguity of this statute, we requested additional briefing by the parties on the application of Minn.Stat. § 59A.12, subd. 2. A reading of those supplemental briefs and search of the legislative history, pursuant to Minn.Stat. § 645.16 (1986), clarified that ambiguity.

It is evident from the legislative history of chapter 59A that this statute was intended to regulate premium finance companies. However, we do not agree with Home's characterization of the law as an anti-premium finance company chapter. We note the logic of CUPAC's argument that there is no rational basis for distinguishing between unearned premiums generated by cancelled policies and those generated by expired policies. In both instances, there are evident policy reasons for returning to the financing company any unused funds borrowed solely to finance the policy. Nevertheless, Home's theory that subdivision 2 applies only to premiums returned upon cancellation is supported by the record of the bill in the legislature. When summarizing the provisions of this proposed statute, the author of the bill explained that section 12 "deals with unearned premiums on cancelled policies." This observation comports with other language of section 59A.12 which suggests that it deals only with cancellation incidents.

In the absence of a legislative provision for unearned premiums from expired policies, the agreement between the parties must control. CUPAC's contract, even if Home were bound by it, does not provide for more than a security interest on returned premiums upon the expiration of an insurance policy. The trial court correctly found that CUPAC did not provide Home with notice of Arctic's default and CUPAC's intent to exercise its right to the returned premium.

## II.

CUPAC argues that Daly became liable under the IMI agreement when it assumed the role of producing agent for Home. CUPAC also claims it stands in the shoes of Arctic for the collection of unearned premiums because of the assignment.

The trial court found that Daly was not liable to CUPAC for the returned premiums because Daly had no notice of the assignment. Further, even if Daly had notice of the assignment of premiums, it would not have been obligated to pay the returned premiums to CUPAC unless CUPAC had also given notice of Arctic's de-

fault. We agree with the trial court's analysis.

Where assignments are given for security, the assignee's rights against the assignor and third parties with notice of the assignment are conditional upon the assignor's nonperformance. *See* 4 A. Corbin, *Corbin on Contracts* § 881 (1951).

Because CUPAC's interest was only a security interest, it could not claim the right of direct return of the premiums absent the default of Arctic. Upon Arctic's default, it was incumbent upon CUPAC to notify the agent of that default and of CUPAC's intent to claim the premiums. Nothing in the record demonstrates that CUPAC took these steps. In the absence of this notice to Daly, the Daly Agency is not liable to CUPAC for the returned premiums.

### DECISION

CUPAC has made no showing of valid contract claims, and its claims are not supported by statutory law.

Affirmed.